

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

---

UNITED STATES OF AMERICA,

        Plaintiff,

    v.

DAVID BOSCHEE,

        Defendant.

CR07-40014

## UNITED STATES' SENTENCING MEMORANDUM

---

COMES NOW the United States of America, by and through United States Attorney Marty J. Jackley, and respectfully submits the United States' Sentencing Memorandum.

## I. FACTS

A. <u>Grooming Process</u>

In June 2006 Defendant, David Boschee, age thirty-seven (DOB:  05.18.69) initiated contact with the victim, age fifteen (DOB:  03.11.91) through her MySpace account.  <u>See</u> Exhibit 13 (victim's MySpace page); Exhibit 31-a (January 24, 2007, Kelly interview).  The Defendant engaged in a lengthy manipulation scheme or "grooming process."  <u>See generally</u> Exhibit 16 (victim's email logs with Defendant); Exhibit 17 (Defendant's chat logs with the victim).  Defendant purchased a significant number of gifts for the victim.  <u>See</u> Exhibits 1 through 8 (various gifts).  He exerted influence over the victim's academics, which involved Defendant's accessing the victim's Sioux Falls School District ParentView log approximately 120 times.  <u>See</u> Exhibit 9 (Sioux Falls

School District ParentView access logs); Exhibit 16-c (September 18, 2006, weekly

academic check in); Exhibit 16-h (weekly academic progress report, November 2006).

The "grooming process" further included cybersex, and Defendant instructing the victim

on masturbation.  See Exhibit 17-a, p.73 (chat log of June 19, 2006); Exhibit 16-q

(January 8, 2007, at 2:54 a.m.).

B.      Pre-Travel Evidence of Victim's Lack of Consent

        The chat logs and emails exchanged between the Defendant and victim just prior

to his travel demonstrate the victim's state of mind and overall lack of consent for sexual

intercourse.  See generally Exhibit 16-a (September 16, 2006, email); and Exhibit 17-d

(September 25, 2006, chat log).  Specifically, on September 16, 2006, Defendant

emailed the victim:

> So please, come back, and talk to me.  I love you so much.  I hurt when
> you hurt.  And in just 14 days, you will know.  There will be no more
> misunderstandings.  You will see and hear and feel how much I love you.
> How much I care about you.  **You will know I mean you no harm**, and
> that you are the most precious thing to me in the world.  David

See Exhibit 16-a (September 16, 2006, email) (emphasis added).

        On September 25, 2006, Defendant and the victim engaged in a lengthy

discussion wherein the victim makes it clear "no sex."  See Exhibit 17-d, pp.14-29

(September 25, 2006, chat log).  Pertinent parts of the chat are as follows:

        V:      **Because there will be no sex.**

        D:      *blinks*

        D:      So . . . my choices are go out and no sex.

        V:      Take the "but" out, **there will be no sex regardless of what
                we do**.  We can just enjoy each others company.

D:     or stay in and have sex.

V:     no no

V:     I just meant that lets not have sex.

D:     you're kidding right?

D:     what brought this on?

V:     im not kidding.

V:     it made me feel horrible to think that you're thinking that I just want sex, so
       to simply things, just don't have sex this weekend just hang out, enjoying
       each other, being people, like you said, observing one another.

. . . .

D:     I'm not going to force you.
       Or even "force" you.
       It's your body.

V:     I know david, I trust you, I think you now what you're doing and you know
       how to handle me.

. . . .

V:     so before, you didnt want sex

D:     Could happen.

V:     now you do want sex.

D:     No.

. . . .

V:     I've broken your heart?

D:     yes

V:     because I wont have sex with you?

D:     that's part of it.

. . . .

D:    We would start over, start fresh, heal, repair old wounds.

V:    by having sex?

D:    partly, yes.

. . . .

D:    **no sex. It's alright. It's your body. It's your decision. You have another 6 months before you are legal anyway.**

well, legal for me.

fine.

V:    okay.

fine.

Lets just not meet period then, since you're so unhappy.

See Exhibit 17-d, pp.14-29 (September 25, 2006, chat log) (emphasis added).

C.    <u>Defendant's Intentions for Sex and Sadomasochistic Abuse</u>

However, Defendant's true intentions with the victim are evidenced from Defendant's posts on Bondage.com user profile of BadWhenIWant2B. <u>See</u> Exhibit 27-a (Bondage.com subscriber information); Exhibit 27-c (Defendant's forum and responses). On April 18, 2006, in describing himself as a masochist, Defendant posts "I only know that if I ever get my hands on a masochist, she is in for a great deal of pain." <u>See</u> Exhibit 27-c (April 18, 2006, at 1:23). On September 13, 2006, Defendant posts "the scarf would lay across the back of the neck, then across at the throat." <u>See</u> Exhibit 27-c-3 (September 13, 2006). On September 18, 2006, Defendant seeks advice on "whipping belts." <u>See</u> Exhibit 27-c-5 (September 18, 2006).

Defendant concealed the nature of his true intentions of sadomasochistic abuse from the victim.  In the chat log of September 25, 2006, Defendant refuses to give the victim a key to his motel room where he had rigged bed restraints and hidden other sadomasochistic tools.  See Exhibit 17-d, pp.79-80 (September 25, 2006, chat log).  In denying the victim early access, Defendant set forth "but I don't like that plan . . . you're a snoop . . . you're going to spoil all my surprises."  See Exhibit 17-d, pp. 80, 86 (September 25, 2006, chat log).

D.     Evidence of Defendant's Force and Sexual Abuse

Evidence that Defendant knowingly caused the victim to engage in sexual acts by both force and threat is established by the following evidence:  (1) the victim's  account set forth in her interviews (Exhibit 31-a through e); (2)  Defendant's own words in his emails and chat logs (Exhibits 15, 16, 17); (3) Defendant's own posts on Bondage.com and activity log (Exhibit 27-a through c); and (4) evidence seized at Defendant's apartment consistent with his Bondage.com posts and the victim's account.  See Exhibit 23 (Defendant's red and black gym bag containing sadomasochistic and sexual-related items).

The victim described having vaginal intercourse five times; oral sex on the Defendant approximately four times; oral sex on her approximately five times; and anal sex.  See Exhibit 31-d, p.1 (January 31, 2007, Kelly interview); Exhibit 31-e, p.1 (January 31, 2007, Behan joint interview).  At a minimum, unlawful and illicit sexual conduct occurred on the three separate occasions of September 29, September 30, and October 1, 2006.  See Exhibit 31-a, p.3 (January 24, 2007, Kelly interview) (sex on Friday, Saturday, and Sunday – all three days that she was with him).

With respect to Friday, September 29, 2006, the victim described the cuff and ankle restraints at the motel as already being set up under the mattress before she arrived at the room, stating that she didn't even see them until after he put them on her. See Exhibit 31-a, p. 2 (January 24, 2007, Kelly interview); see also Exhibit 31-c, p.2 (January 26, 2007, Kelly interview); Exhibit 17-d, pp.80, 86 (September 25, 2006, chat log, no room key to the victim).  The victim said the Defendant was strangling her. See Exhibit 31-a, p.2 (January 24, 2007, Kelly interview).  She said she was afraid that if she asked him to stop, that he would kill her. Id.  When describing Defendant's strangling her and hitting her, she stated, "I hated it." See Exhibit 31-a, p.4 (January 24, 2007, Kelly interview).  The victim told him numerous times during the abusive sex to stop, but he wouldn't and he just hit her harder, stating he wouldn't stop hitting her until she said a certain phrase, "thank you daddy." Id.

In reference to the anal sex, the victim indicated it hurt so badly, and she kept saying "no" during the whole act. See Exhibit 31-d, p.1 (January 31, 2007, Kelly interview).  During the sex, Defendant used a scarf to choke her to the point where she almost passed out. Id.  See Exhibit 26 (Defendant posing in a sadomasochistic photo wearing a gag with a black scarf similarly described to the one used on the instant victim).  See Exhibit 24.  The victim described at different times Defendant would try and stuff her panties, bra, and scarf down her throat. Id.  At another point, Defendant had a whip that he struck her in the vaginal area. Id.  See Exhibit 31-e, p.2 (January 31, 2007, Behan interview).  She further recounted him biting and spanking her. See Exhibit 31-d, p.1 (January 31, 2007, Kelly interview).  At another point while the victim was restrained, Defendant laughed at the victim's requests to be released. See Exhibit 31-e,

p.2 (January 31, 2007, Behan interview).  At another point, Defendant made the victim wear a red collar similar to that which a pet would wear and told her she was "his pet." Id. See Exhibit 25 (Defendant wearing a similarly described red collar in cross dressing photo).

The victim expressed the following concerns for her and her mother's safety with respect to Defendant's potential release:  "If he is willing to punish me for not speaking to him for a week by beating me with a cane, imagine what he would do to my mother for turning him into the police and to me for cooperating."  See Exhibit 31-e, p.3 (January 31, 2007, Behan joint interview).

The level of Defendant's conduct is perhaps best described in his own chat log of January 4, 2007:

> a deeper level
> more.  just more. more trust. more submission. more
> passion.
> When I had you tied down
> face down
> and I was on top of you
> leaning over you
> whispering in your eat
> **choking you**
> **strangling you**
> again
> its was like the night before
> you were...caught
> fear
> excitement
> **escape**
> **or submit**
> **you chose to submit**
> you didn't...
> you didn't ask me to stop
> you didn't scream
> you didn't try to get away
> your pleas...

oh god

. . . .

you gave your very life to me that night, [victim redacted]
a level of trust I don't think you have ever demonstrated to
anyone else, you did so that night.
You put your life in my hands, and knew I wouldn't hurt you.

. . . .

. . . .

I know, in retrospect is seems pretty scary.  In the
cold light of day it is easy to slip that armor back on,
raise your shields, make me into a monster.
But that night...
that moment...
you were mine.
In a way you've never been for anyone else.
and I was yours
in a way i've never been for anyone else
we were...perfect
**hunter and prey**
master and slave
daddy and baby girl

See Exhibit 15-a, pp. 54-57 (January 4, 2007, chat logs) (emphasis added).

The fear the victim expressed during her interviews is both corroborated and

highlighted within the following chat colloquy with Defendant:

D:    because when I was strangling you? You never asked me to stop.

V:    You're right, I told you

D:    no
      you didn't

V:    you simply couldnt hear me because of all that adrenalated [sic] blood
      rushing to your head

D:    no

V:    besides I was scared out of my mind
      I was begging you to.
      Just like with the spanking

D:    you just kept saying "Daddy...please"

V: you simply blocked it out so that you could pretend I wanted it
  sure I did

D: you did.
  and that's how I know.
  you're mine.
  you belong to me.

See Exhibit 17-e, p.48 (October 13, 2006, chat log).  In an email of October 30, 2006,

Defendant stated "I am a sado-masochist.  I thought I understood the depths someone

will go to receive pain.  You've shown me I don't understand anything."  See Exhibit 16g

(October 30, 2006, email).

E. Evidence of Defendant's Extreme Conduct

  The chat logs further evidence Defendant's conduct and lack of respect toward

the victim wherein he sets forth that the victim's feet were too sensitive, "I couldn't even

hold on to them when I was fucking you."  See Exhibit 17-e, p.67 (October 13, 2006,

chat log).  He goes on to state, "you let me make you my bitch . . . **you even wore my**

**collar**! . . . your ass was tighter than your pussy . . . I'd rather fuck your ass."  See

Exhibit 17-e, p.67-68 (October 13, 2006, chat log).  In the chat log of October 13, 2006,

Defendant further described his actions as follows:

V: I couldn't even get you off.

D: no
  not with your pussy
  or your mouth
  I had to use your dirty ass

V: im so horrific you had to turn me around, you couldnt evne [sic] look at
  me.  thats how much you hated it.

D: yes.

V: I see.

            why did you have sex with me then?

D:     I kept the lights low

V:     I noticed.

D:     because your ass is better than my hand.

V:     why the gifts
        why not a bitch at a bar

D:     because you're a whore

V:     you really don't lov eme [sic] do you

D:     I love your ass
        I loved cumming in it
        I should have taken the condom off
        so my cum would have dripped out of it

See Exhibit 17-e, p.70-71 (October 13, 2006, chat log); see also Exhibit 17-g (October 30, 2006, chat where victim describes the anal sex as "it hurt" with Defendant indicating "it always hurts the first time").

On October 2, 2006, the day after Defendant's travel to Sioux Falls, he posts on Bondage.com with respect to anal sex positioning "worked just swell this weekend . . . and she was an anal virgin, too." See Exhibit 27-c-8 (post of October 2, 2006). A further disturbing revelation, Defendant has kept a sexual activity completion log wherein he describes and identifies having completed the following acts:

    . . . .
    restraints – wrist to ankle/neck/waist (give)
    restraints – wrist (give)
    restraints – ankle (give)
    . . . .
    restraints – hand cuffs (give)
    restraints – metal (give)
    plastic wrap (give)
    restraints – rope (give)

padlocks (give)
silk scarves (give)

. . . .

gags – ball type (give)
gags – bits (give)
gags – cloth (give)

. . . .

restraints – leather (give)

. . . .

abrasion (give)

. . . .

spanking hard (give)
biting (give)

. . . .

face slapping (give)
hair pulling (give)
nipple clamps (give)
**nipple torture (give)**

. . . .

scratching (give)

. . . .

asphyxiation (give)
**choking (give)**

. . . .

nipple weights (give)

. . . .

belt/strap (give)

. . . .

whipping - cat (give)

. . . .

sensory deprivation (give)

. . . .

**pain**

. . . .

collar and leach (dom)

. . . .

collars (dom)

. . . .

**forced exercise (dom)**

. . . .

**forced servitude (dom)**

. . . .

humiliation – public (dom)
humiliation – private (dom)

. . . .

**forced nudity (dom)**

. . . .

punishment scene (dom)

. . . .

See Exhibit 27-b, pp.1-5.  Defendant's conduct toward a different abuse victim is

described in his own words as follows:

> Her only talent lay in her submission.  She let me do whatever I wanted
> with her.  So I did.  I wanted oral.  I didn't ask.  I pushed her head down.  I
> wanted anal.  I didn't ask.  I turned her over and took her (my first and only
> time, by the way).  I tied her up.  I blindfolded her.  I spanked her.  I
> humiliated her.  I used her in any way I could imagine, or had means to
> employ, and it was fantastic.  She was my sex slave.  And she knew it.  I
> may have even given her an orgasm or two.  I don't remember.  Neither of
> us really cared about her cum.  Only mine.

See Exhibit 16-b, p.3 (September 17, 2006, email).

The sadomasochistic torturous conduct described by the victim, as well as the

Defendant in his chats and emails, is consistent with the physical evidence seized in

Defendant's bedroom.  See Exhibit 23 (Defendant's red and black gym bag containing

sadomasochistic and sexual-related items).  Specifically, the red and black Bobcat gym

bag was found containing the following general items:

> two small leather fur-lined cuffs with buckle (wrist); two large leather fur-
> lined cuffs with buckle [ankle]; one black rubber whip; one black silk scarf
> with knot tied in center; one bottle KY massage lubricant (6.7 oz); one red
> collar with leash hook; one box Trojan ultra thin condoms [empty]; eight
> Trojan ultra thin condoms in wrappers; one box of 10-pack emergency
> candles; one black slapper crop; one bottle 70% isopropyl rubbing alcohol;
> one black spandex hood with blindfold; two black and red cock rings; one
> tube Equate brand extra strength muscle rub; one red and black ball gag
> in plastic Zip-loc sandwich bag; one Sportssheets rubber whip (black and
> pink); one o-ring gag; one rubber bit gag; one grey rubber stretchy band of
> material, approximately 5'0" in length; one red and black cock ring/ball
> separator; one Great Plaines Health Company paper bag, containing a red
> rubber stretchy band of material, approximately 5' in length; one pair of
> black finish double lock handcuffs; one plastic wrapper; four small gold
> luggage style locks, interconnected; one small key ring, holding a black

finish handcuff key and a key which opens the gold luggage locks; one rough rider studded latex lubricated condom; six Trojan ultra pleasure condoms in wrappers; two black adjustable nylon bondage straps; one black leash; and one black dual-pointed Sharpie CD marker.

See Exhibit 23 (Defendant's red and black gym bag containing sadomasochistic and sexual-related items).

F.    Defendant's Preparations for Caning

Almost immediately after Defendant's travel to Sioux Falls he again began using the Internet to entice and coerce this victim to engage in unlawful sexual activity and began preparations for another visit to occur over Valentine's Day 2007. See Exhibit 16-o (January 6, 2007); see generally Exhibits 15, 16, 17. On January 8, 2007, Defendant sought advice on Bondage.com for "choosing the right cane – pros and cons – techniques." See Exhibit 27-c-12, p.1. Defendant further posts "I am undecided as to how I wish to inflict the pain – this first caning is for punishment, not pleasure, though it wouldn't exactly upset me if she liked, and I wouldn't mind if she liked it enough to get off on it. I'm twisted like that." Id., p.7; see Exhibit 16-o (January 6, 2007) ("He is a master . . . I am the slave . . . he is visiting me this Valentine's Day, and, among many things, he has scheduled a caning. He will bind me to a bed, gag me, and beat me to welts with a cane.") Defendant further emailed the victim seeking "the circumference of your neck, which can be measured with the Taylor's tape that I bought for you." See Exhibit 16-r (email of January 11, 2007, also wishing to know the size of her mouth).

Defendant also set forth potential future intentions regarding the victim's juvenile friend that he met during his previous trip to Sioux Falls. He described her as a pretty girl, attractive with a nice body, "I'd fuck her. No question . . . as I take her cherry . . . I

would make you get me hard and wet, make you put the condom on me, before I fucked your friend?. . . while I lick her to orgasm . . . maybe I'll keep you both." <u>See</u> Exhibit 17-f, p.53-57 (October 13, 2006, chat log).

G.   <u>Possession of Child Pornography</u>

Additional evidence for consideration as "relevant conduct" includes Defendant's possession of eight images matching the child pornography known victim database; 465 images of interest that contained images suspected to be child pornography; thirteen pornographic movies of interest. <u>See</u> **DISCUSSION**Exhibit 21 (child porn photos).

A.   <u>U.S.S.G. § 2G1.3(c)(3) CROSS-REFERENCE</u>

U.S.S.G. § 2G1.3(c)(3) provides as follows: "If the offense involves conduct described in 18 U.S.C. §§ 2241 or 2242, apply §2A3.1 (Criminal Sexual Abuse; Attempt to Commit Criminal Sexual Abuse)." 18 U.S.C. § 2241(a) makes it unlawful for an individual to knowingly cause another person to engage in a sexual act by using force against that person. <u>See</u> 18 U.S.C. § 2241(a)(1). 18 U.S.C. § 2242(1) makes it unlawful for a person to knowingly cause another person to engage in a sexual act by threatening or placing that other person in fear. <u>See</u> 18 U.S.C. § 2242(1).

Under Eighth Circuit case law, the element of force is satisfied by showing the use of such physical force as is sufficient to overcome or restrain a person; or the use of a threat of harm sufficient to coerce or compel submission by the victim. <u>See</u> <u>United States v. Bercier</u>, 506 F.3d 625, 628 (8th Cir. 2007) (<i>quoting</i> <u>United States v. Allery</u>, 139

F.3d 609, 611 (8th Cir.) <u>cert</u>. <u>denied</u> 524 U.S. 962, 118 S.Ct. 2389, 141 L.Ed. 2d 754 (1998)) (other citations omitted).[1]

Evidence of Defendant's use of violence, fear, and manipulation to cause this victim to engage in sexual acts is demonstrated in each of the following: (1) the victim's accounts set forth in her interviews; (2) Defendant's own words in his emails and chat logs; (3) Defendant's posts on Bondage.com; and (4) physical evidence seized from Defendant's bedroom.  <u>See generally</u> Exhibit 31 (victim's interviews); Exhibit 15 (victim's chat logs); Exhibit 16 (victim's email logs with Defendant); Exhibit 17 (Defendant's chat logs with the victim); Exhibit 23 (Defendant's red and black gym bag containing sadomasochistic and sexual-related items); Exhibit 27 (Bondage.com documentation).

The evidence regarding the victim's pleas for Defendant to stop and the victim's submission to Defendant's acts standing alone constitute force requiring the application of the cross-reference.  <u>See</u> Section I.D. (Evidence of Defendant's Force and Sex Abuse); and Section I.B (Pre-Travel Evidence of Victim's Lack of Consent). Defendant's sadomasochistic acts of restraint, collaring, gagging, strangling, whipping, and biting the victim during repeated sex settings further constitutes force.  <u>Id</u>.  <u>See also</u> Section I.E. (Evidence of Defendant's Extreme Conduct).

When the circumstances of the cross-reference under U.S.S.G. § 2G1.3(c)(3) exists, "the cross-reference must be applied."  <u>See</u> <u>United States v. Banks</u>, 190 Fed.

---

[1]With respect to solicitation of minors, South Dakota law defines "prohibited sexual act" to include sadoism, masochism, and sadomasochistic abuse.  <u>See</u> SDCL § 22-24A-2.  As a matter of law, no one has the right to beat another even though that person may ask for it.  Assault and battery cannot be consented to by a victim, for the state makes it unlawful and is not a party to any such agreement between a victim and perpetrator.

Appx. 825, 826 (11th Cir. 2006); see generally, United States v. Benais, 460 F.3d 1059, 1063-64 (8th Cir. 2006) (application of the cross-reference under U.S.S.G. § 2A3.2(c)). Accordingly, it is the United States' position that the cross-reference applies and that pursuant to U.S.S.G. § 2A3.1(a) the base offense level is thirty (30).

B. U.S.S.G. § 2A3.1(B)(1) (FOUR-LEVELS)

Because the offense involved conduct described in 18 U.S.C. § 2241(a), there should be a four-level enhancement pursuant to U.S.S.G. § 2A3.1(b)(1).  There exists a plethora of evidence that Defendant knowingly caused this victim to engage in a sexual act by using force against her, restraining her, and manipulation.  This is again demonstrated through the victim's accounts contained in her interviews, Defendant's chat logs and emails, Defendant's Bondage.com postings, and the physical evidence seized in his bedroom from Defendant's residence.  See Exhibits 15, 16, 17, 23,  27-a-c, and 31-a-e.  See Section I.D. (Evidence of Defendant's Force and Sex Abuse); Section I.B (Pre-Travel Evidence of Victim's Lack of Consent); and Section I.C. (Defendant's Intentions for Sex and Sadomasochistic Abuse).

C.    U.S.S.G. § 2A3.1(b)(2)(B) (TWO-LEVELS)

U.S.S.G. § 2A3.1(b)(2)(B) provides that if the victim had attained the age of twelve years but had not attained the age of sixteen years, increase by two levels.  The victim in this case, DOB:  03.11.91, was age fifteen at the time of the offense and therefore, a two-level increase is appropriate.

D.   U.S.S.G. § 2A3.1(b)(6)(B) (TWO-LEVELS)

U.S.S.G. § 2A3.1(b)(6)(B) provides a two-level increase if a computer or interactive computer service is used to persuade, induce, entice, or coerce a minor to engage in prohibited sexual conduct.  The email logs contained in Exhibit 16-a through d, as well as Defendant's chat logs contained in Exhibit 17-a through d, constitute specific evidence of Defendant's use of a computer or an interactive computer service to persuade, induce, entice, and coerce this minor victim to engage in prohibited sexual conduct.  See also Exhibit 31-a through e (victim's interviews); Exhibit 15-a through e (victim's January 4, 2007, chat logs with Defendant); Exhibit 16-e through w (victim's email logs with Defendant); and Exhibit 17-e (Defendant's chat logs with the victim).

E.   U.S.S.G. § 3E1.1(a) – ACCEPTANCE OF RESPONSIBILITY (ZERO LEVELS)

U.S.S.G. § 3E1.1(a) provides that if the defendant **clearly** demonstrates acceptance of responsibility for his offense, decrease the offense level by two (2) levels. "When determining eligibility for the two-level adjustment, a court looks to, among other things, whether or not the defendant 'truthfully admits' the conduct comprising the offense(s) of conviction and truthfully admit[s] or falsely denies any additional relevant conduct for which the defendant is accountable."  United States v. Kiel, 454 F.3d 819, 824 (8th Cir. 2006) (quoting U.S.S.G. § 3e1.1 cmt. n.1(a)). "'[A] defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility.'" Kiel, 454 F.3d at 824 (quoting U.S.S.G. § 3E1.1, cmt. n.1(a)).  See United States v. Contreras, 927 F.2d 1058, 1059 (8th Cir. 1991) (denial based upon defendant's refusal to admit the extent of

his involvement in a drug distribution scheme beyond the cocaine seized in his case even though a plea of guilty was entered).

Section 3E1.1 requires not only a defendant to show "a recognition and affirmative acceptance of responsibility for relevant conduct, and remorse for that conduct," but also that he "must accept responsibility for *all* of the conduct that is part of his conviction. . . . 'and not minimize conduct or partially accept responsibility.'" United States v. Erhart, 415 F.3d 965, 971 (8th Cir. 2005). "Special emphasis is placed on the defendant's honesty about the factual basis for the offense, rather than on emphasis on whether the defendant pleaded guilty or took the matter to trial." Id. A lack of candor with a probation officer preparing the presentence report can further warrant the denial of a reduction for acceptance of responsibility. See United States v. Miller, 951 F.2d 164, 165 (8th Cir. 1991).

"A defendant who enters a guilty plea is not entitled to a two-level reduction." See U.S.S.G. § 3E1.1 cmt. n.3; United States v. Furlough, 980 F.2d 476, 477 (8th Cir. 1992) (en banc). "The burden is on the defendant to establish entitlement to a downward adjustment for acceptance of responsibility." Peters v. United States, 464 F.3d 811, 812 (8th Cir. 2006) (citing United States v. Honken, 184 F.3d 961, 968 (8th Cir. 1999)).

A chronology of Defendant's conduct and actions shows no clear demonstration of acceptance of responsibility. At the time of his arrest, Defendant refused to provide information about the victim or her friends and ultimately invoked his right to legal counsel. See Exhibit 32 (January 29, 2007, Behan interview). On February 8, 2007, while awaiting trial, and approximately two weeks before his change of plea, Defendant

writes correspondence expressing his state of mind.  See Exhibit 29 (Boschee's handwritten letter addressed to "whomever").  Defendant demonstrates little remorse describing "they are only interested in career advancement, since my crime is the hot topic of the day. . . .  I have no hope of a fair trial, the FBI saw to that with the press release.  They want a conviction, no matter the facts and no matter who they have to hurt in the process.  What can one man do against the power of the federal government. . . . **instead, they have chosen to lie and mislead**. . . . indeed, if not for her age, nothing we did would even raise an eyebrow."  See Exhibit 29 (emphasis added).

On essentially the eve of trial after the United States has submitted pre-trial filings, jury instructions, and prepared witnesses, the Defendant enters a guilty plea accompanied with a statement of factual basis he prepared.  While the statement of factual basis covers the elements of the offense, it by no means provides insight or evidence of "all of the conduct that is part of his conviction."  See generally, Erhart, 415 F.3d at 971 (providing special emphasis on defendant's honesty about the factual basis for the offense).

On March 16, 2008, while awaiting sentencing, Defendant made direct unwelcome contact with the victim in this matter, constituting further evidence of his continued attempt to exert control over her.  See Exhibit 30 (Easter 2008 letter to the victim).  See U.S.S.G. § 3E1.1, cmt. n.1(b).  During the preparation of the presentence report, Defendant declined to discuss either the offense of conviction with the probation officer, and otherwise failed to accept responsibility for all of the conduct that is part of his conviction, as well as additional relevant conduct for which the Defendant is accountable under U.S.S.G. § 1B1.3.  See U.S.S.G. § 3E1.1, cmt. n. 1(a).  Finally, the

nature of Defendant's objections to the presentence report by no means supports a

contention that Defendant has clearly demonstrated acceptance of responsibility for his

offense.

F.      U.S.S.G. § 4B1.5(b)(1) – ENHANCEMENT FOR PATTERN OF ACTIVITY
        INVOLVING PROHIBITED SEXUAL CONDUCT (FIVE-LEVEL)

U.S.S.G. § 4B1.5(b)(1) provides as follows:

(b)     In any case in which the defendant's instant offense of conviction is
        a covered sex crime, neither §4B1.1 nor subsection (a) of this
        guideline applies, and the defendant engaged in a pattern of activity
        involving prohibited sexual conduct:

        (1)     the offense level shall be **5** plus the offense level
                determined under Chapters Two and Three.
                However, if the resulting offense level is less than
                level **22**, the offense level shall be level **22**, decreased
                by the number of levels corresponding to any
                applicable adjustment from §3E1.1.

The five-level enhancement is applicable because Defendant's instant offense of

conviction is a covered sex crime, and the Defendant engaged in a pattern of activity

involving prohibited sexual conduct.  U.S.S.G. § 4B1.5 cmt. n.2 defines covered sex

crime to include among others, an offense perpetrated against a minor under either

Chapter 109A or Chapter 117 of Title 18, United States Code.  Because Defendant's

offense of coercion or enticement under 18 U.S.C. § 2422 is contained within Chapter

117, it constitutes a covered sex crime.

With respect to "pattern of activity," U.S.S.G. § 4B1.5 cmt. n.4(B) specifically

provides as follows:

(B)     Determination of Pattern of Activity.

        (I)     In General.  – For purposes of subsection (b), the defendant
                engaged in a pattern of activity involving prohibited sexual conduct

if on at least two separate occasions, the defendant engaged in prohibited sexual conduct with a minor.

(ii)     <u>Occasion of Prohibited Sexual Conduct</u>. – An occasion of prohibited sexual conduct may be considered for purposes of subsection (b) without regard to whether the occasion (I) occurred during the course of instance offense; or (II) resulted in a conviction for the conduct that occurred on that occasion.

At a minimum, Defendant engaged in fifteen (15) distinct unlawful sexual acts: (1) vaginal intercourse on five occasions; (2) oral sex on Defendant approximately four times; (3) oral sex on the victim approximately five times; and (4) anal sex on one occasion.  <u>See</u> Exhibit 31-d, p.1 (January 31, 2007, Kelly interview); Exhibit 31-e, p.1 (January 31, 2007, Kelly interview); Exhibit 31-e, p.1 (January 31, 2007, Behan joint interview).  <u>See</u> <u>generally</u>, Exhibit 15-a, pp. 53-57 (January 4, 2007, chat log); Exhibit 17-e, p.48 (October 13, 2006, chat).  <u>See</u> 18 U.S.C. § 2246(2)(A) & (B).  These sexual acts occurred on three separate occasions:  September 29, September 30, and October 1, 2006.  <u>See</u> Exhibit 31-a, p.3 (January 24, 2007, Kelly interview).

As a general principal, U.S.S.G. § 4B1.5 "is intended to provide lengthy incarceration for offenders who commit sex crimes against minors and do present a continuing danger to the public."  <u>See</u> U.S.S.G. § 4B1.5 cmt. background; <u>see</u> <u>generally</u> <u>United States v. Leach</u>, 491 F.3d 858, 867 (8th Cir. 2007).  Because the United States Sentencing Guidelines state that the enhancement for repeat sex offenders (U.S.S.G. § 4B1.5(b)(1)) is applied in <u>addition</u> to the enhancements found in Chapters II and III, there exists no impermissible "double counting" in that these enhancements account for different kinds of harm.  <u>See</u> <u>United States v. Jones</u>, 440 F.3d 927, 929 (8th Cir. 2006).

The Eighth Circuit Court of Appeal's analysis and treatment of separate acts of sexual conduct or abuse for count grouping under U.S.S.G. § 3D1.2 is analogous to the case at hand. In United States v. Plumman, 409 F.3d 919 (8th Cir. 2005), the court affirmed District Court Judge Charles B. Kornmann's refusal to group separate acts of sexual abuse occurring on different dates. Id., 409 F.3d at 930. The court recognized that "two counts of rape for raping the same person on different days . . . are not to be grouped together . . . multiple episodes of sexual misconduct that society has legitimately criminalized occurring with the same person on different days are not 'substantially the same harm' for purposes of §3D1.2." Id. (quoting U.S.S.G. § 3D1.2, cmt. n.4); United States v. Vasquez, 389 F.3d 65, 77 (2d Cir. 2004) (additional citations and quotations omitted). Similarly, this victim faced substantially different harm on three separate instances and dates. U.S.S.G. § 4B1.5 holds Defendant responsible and accountable for his pattern of criminal conduct that he engaged in on all three separate dates.

G.    U.S.S.G. § 5K2.8 – Extreme Conduct

U.S.S.G. § 5K2.8 provides as follows:

> If the defendant's conduct was unusually heinous, cruel, brutal, or degrading to the victim, the court may increase the sentence above the guideline range to reflect the nature of the conduct. Examples of extreme conduct include torture of a victim, gratuitous infliction of injury, or prolonging of pain or humiliation.

It is well-settled that forced oral and anal sex may be especially degrading under U.S.S.G. § 5K2.8 and that those factors are not adequately taken into account under §2A3.1. See United States v. Johnson, 56 F.3d 947, 958 (8th Cir. 1995) (holding that

defendant's extreme conduct, including forcing victim to perform oral sex, fell within parameters of §5K2.8); United States v. Lewis, 115 F.3d 1531, 1539 (11th Cir. 1997) (affirming the district court's reliance on "the nature of the assaults" that included "forcible oral, anal, and vaginal sex, degrading in type, and insulting in nature"); United States v. Anderson, 5 F.3d 795, 804 (8th Cir. 1993) (rejecting argument that forced oral and anal sex were already taken into consideration by Guidelines); United States v. Chatlin, 51 F.3d 869, 873 (8th Cir. 1995) (stating that "extreme conduct may be established by a showing of anal intercourse, which is a degrading form of sexual abuse"); United States v. Ellis, 935 F.2d 385, 386 (1st Cir. 1991) (holding that particularly degrading forms of sexual abuse warranted upward departure).

The evidence regarding forced vaginal, oral, and anal sex despite the victim's pleas for the Defendant to stop, and at other times the victim's submission to Defendant's manipulation, constitutes force for application of U.S.S.G. § 2A3.1. See Section I.D. (Evidence of Defendant's Force and Sexual Abuse). Defendant's acts of strangulation (see Exhibit 31-a, p.2, 4, January 24, 2007, Kelly interview); striking her until she used the phrase "thank you daddy" (see Exhibit 31-a, p.4, January 24, 2007, Kelly interview); choking her with a scarf (see Exhibit 31-d, , p.1, January 24, 2007, Kelly interview); gagging her with panties, bra, and scarf (see Exhibit 31-d, p.1, January 31, 2007, Kelly interview); whipping her in the vaginal area (see Exhibit 31-d, p.1, January 31, 2007, Kelly interview); forcing her to wear a red collar and referring to her as "his pet;" (see Exhibit 31-e, p.2, January 31, 2007, Behan joint interview) all constitute conduct beyond mere force. See Section I.D. (Evidence of Defendant's Force and Sexual Abuse).

Defendant's unusually heinous and degrading conduct included use of masochistic sex tools specifically referenced in Exhibit 23 (Defendant's red and black gym bag containing sadomasochistic and sexual-related items).  Defendant was exceptionally degrading to the victim through chat and emails in reference to Defendant's ass (see Exhibit 17-e, p.67-68, 70, October 13, 2006, chat log).  See generally, Section I.E., Evidence of Defendant's Extreme Conduct.  His sexual activity completion log on Bondage.com constitutes a score card of degrading and deplorable acts of nipple torture, forced servitude and humiliation to this victim.  See Exhibit 27 (Bondage.com documentation).  His conduct also extends to different abuse victims as referenced in his own words of September 17, 2006, wherein he described sexual humiliation and abuse of a different "sex slave."  See Exhibit 16-b, p.3, (September 17, 2006, email).  Defendant's possession of extremely graphic child pornography constitutes further relevant conduct.  See Section I.G., Possession of Child Pornography.

To the extent the Court's offense level calculation is below a level 43, Defendant's extreme heinous and degrading conduct, which includes humiliation of a fifteen-year-old victim, justifies an upward departure to that level.

## CONCLUSION

This Defendant engaged in a lengthy grooming process to place himself in a position of trust and authority over a fifteen-year-old victim.  While potential sex was the subject of several pre-travel discussions between the Defendant and the victim, the victim made it clear the week before Defendant's travel that she did not wish to engage in sex.  Through force and manipulation, Defendant ultimately forced the victim to have

repeated vaginal, oral, and anal sex.  He employed the use of wrist and ankle restraints,
and a dog collar to torture, strangle, gag and whip this fifteen-year-old victim.
Defendant's exceptionally heinous and deplorable conduct justifies the Court's
imposition of a life sentence in this case.

Date:  May 30, 2008

MARTY J. JACKLEY
United States Attorney

PO Box 2638
Sioux Falls, SD 57101-32638
605.357.2330

## CERTIFICATE OF SERVICE

The undersigned hereby certifies on May 30, 2008, a true and correct copy of the
foregoing was served upon the following person(s), by placing the same in the service
indicated, addressed as follows:

John A. Schlimgen
PO Box 966
Sioux Falls, SD 57101

☒ U.S. Mail, postage prepaid
☐ Hand Delivery
☐ Facsimile at
☐ Federal Express
☐ Electronic Case Filing

Marty J. Jackley
United States Attorney